[Civ. No. 14441. Second Dist., Div. One. Nov. 17, 1944.]

FREDA J. THOMAS, Respondent, v. ROY T. THOMAS, Appellant.

Michael Rudolph and Daly B. Robnett for Appellant.

W. Blair Gibbens for Respondent.

WHITE, J.—Plaintiff instituted this action against defendant on July 20, 1943. By her complaint she asked for a dissolution of the "bonds of matrimony now existing between plaintiff and defendant; for the payment by defendant for plaintiff's support and maintenance of the sum of $130 per month pursuant to the property settlement agreement of the parties"; and for attorney's fees "pendente lite and at the time of trial." By the terms of the property settlement between them, the enforcement of which was also sought in plaintiff's complaint, the parties each transferred to the other certain community property and defendant husband agreed to pay plaintiff wife "for her support, care and maintenance,

the sum of $130.00 monthly from and after October 5, 1941."
When, on July 5, 1943, defendant husband refused to make
further payments pursuant to the aforesaid agreement, the
instant action was commenced.

After issuance of an order to show cause directed to said
defendant, a hearing was had thereon October 1, 1943, fol-
lowing which proceedings the court made the following order:

"That Roy T. Thomas pay to Freda J. Thomas the follow-
ing sums at the times, for the purposes and in the manner
specified: $——— on account of attorney's fees herein, pay-
able continued to time of trial. For costs to suit herein, pay-
able continued to time of trial. $130.00 per month for sup-
port of Freda J. Thomas, plaintiff payable: on the 1st day
of each month, commencing: October 1, 1943, and to continue
until further order of court."

From the record it appears that on September 9, 1943, de-
fendant demurred to plaintiff's complaint on both general
and special grounds. In support of his demurrer, defendant
cited authorities that, as against a complaint in a divorce
action upon the grounds of cruelty where the allegations of
cruelty are pleaded in general terms, a demurrer for uncer-
tainty is good (Code Civ. Proc., § 426b). A further ground
of demurrer urged was that plaintiff must allege performance
by her of the terms of the contract she sought to enforce
against defendant.

On September 24, 1943, when the demurrer came on for
hearing, plaintiff's counsel appeared and, at his request and
upon his motion, the demurrer of defendant to plaintiff's
complaint was sustained with ten days allowed to amend such
pleading.

From the above quoted order of October 1st, defendant
prosecutes this appeal, and the same comes before us pursuant
to the provisions of section 953a of the Code of Civil Proce-
dure. The clerk's transcript contains not only the complaint,
the demurrer thereto and the documents which concern the
order to show cause, the hearing thereon and the challenged
order of October 1, 1943, but also copies of the amended com-
plaint filed October 4th; "Husband's Questionnarie" (a form
used in the Superior Court of Los Angeles County in domestic
relations proceedings); the demurrer to the amended com-
plaint filed October 30th; and the minute order overruling
such demurrer made November 5th and entered November
10, 1943, all of which documents are certified by the trial

judge as "the papers, and all of the papers, used or considered in the determination of the matter appealed from herein."

In view of the fact that considerable of appellant's argument upon this appeal depends upon whether or not the "Husband's Questionnaire" was before the court, we feel impelled to say that it could not have been before the court because the record indicates it was not filed until October 16th, some two weeks after the order appealed from was made. While it is true appellant contends in his brief that "by reason of the fact that this case was pending in the Santa Monica Department of said court and it was required that all documents be filed in duplicate, and because of the fact that defendant's counsel had but one original of said affidavit with him at the time, it was necessary for him to reserve the filing thereof until a later date, but the said affidavit was presented and considered at the hearing of the order to show cause." However, respondent, in her brief, after calling attention to the fact that the "Husband's Questionnaire" was filed sixteen days after the hearing, then states: ". . . the respondent does not have any recollection as to whether such Questionnaire was presented to the Court at the time of the hearing, although a copy was handed respondent a few minutes before the hearing. For the purpose of answering the appellant, the respondent will refer to the Husband's Questionnaire, but does not agree that such document was presented or considered by the Court." The situation thus presented shows the wisdom and efficacy of the rule which restricts us on appeal to a consideration only of those documents which were "used" in the determination of the matter appealed from.

While it is not the responsibility of an appellate court to determine what papers were used on the hearing in the court below (*Spreckels* v. *Spreckels,* 114 Cal. 60 [45 P. 1022]), we are authorized to look through form to substance. The clerk's transcript on this appeal, as prescribed by law, should not include all papers on file at the date of the hearing, or at any other date, but only those "used" upon said hearing and the order and notices specifically required. It is unfair to respondent, as well as the court, to permit the presentation and consideration on appeal of papers not before the court below at the time of making the order appealed from. If this were allowable, the case on appeal might often have no resem-

blance to the one decided by the trial court. (*In re Moore,* 78 Cal. 242 [20 P. 558].)

■ The certificate of the trial judge to the effect that said "Husband's Questionnaire" was "used or considered in the determination of the matter appealed from herein" is patently in error. The husband's questionnaire was not filed in the proceeding until sixteen days after the making of the order here appealed from. The reporter's transcript shows that it was not offered or received in evidence, or even mentioned by counsel or court at the hearing where said order was made. Since, from the purported record on appeal before us, it appears that the trial court inadvertently certified as papers "used or considered" upon the hearing at which the order appealed from was made, not only said husband's questionnaire, but also several other papers filed in court after said hearing and its own minute order made some five weeks after the making of the order here appealed from, no consideration can be given by us to any of such papers so erroneously included in said clerk's transcript.

At the hearing that culminated in the order of October 1, 1943, which gives rise to this appeal, no oral testimony was presented. The record reflects that immediately after plaintiff was sworn as a witness in her own behalf and had stated her name, defendant's counsel interrupted to inform the court that this case "is a bit complicated and a brief statement of the issues would serve to acquaint the court with some of the facts we want to bring out by our witness." Thereupon plaintiff's counsel stated that there was but one issue involved and that was whether the defendant should pay the plaintiff money for her support pending the trial of the action, as well as court costs and attorney's fees. Whereupon, defendant's counsel stated: 'The plaintiff and the defendant were married a long time ago. The defendant secured a Nevada divorce in 1941, which my opponent no doubt will contest. So far he has not. Since that time, Mr. Thomas has married and at first, about the time of their divorce, secured in Nevada, a property settlement was entered into between Mrs. Thomas and Mr. Thomas upon which property settlement this proceeding is based. I call the Court's attention to the fact that an action for fraud, for cancellation, has been brought on that agreement. In the event that that agreement is set aside, then Mrs. Thomas will not be entitled to anything.''

After the foregoing statement, plaintiff's counsel informed the court that "so far as we know, we have never been notified of any Nevada divorce. We are standing on a property settlement agreement which was made and by which this defendant has paid to the plaintiff for the last two years, $130.00 per month. It was only when he failed to pay, a few months ago, that this action was brought to enforce it."

Thereupon, the court stated: "If there is no question here but what a property settlement agreement was entered into on November 18, 1941, providing for the payment of $130.00 per month, and there have been payments on that property settlement agreement, with the exception of two months, you need not take any more of my time, because I will rule that the $130.00 be paid instantly. I don't want to hear anything about any fraud or anything else." The above quoted order from which this appeal was taken was thereupon made.

Appellant urges that the court, after sustaining a demurrer to the complaint and before the filing of the amended complaint, was without jurisdiction to make the order appealed from. Such is not the law. Section 137 of the Civil Code does not require as a condition precedent to the making of such an order that there shall be on file a complaint which will withstand attack by demurrer. The only condition requisite to the court's exercise of such discretion is that such order be made "when an action for divorce is pending." An action does not cease to be "pending" upon the sustaining of a demurrer to the complaint with leave to amend.

Appellant further contends that the complaint failed to state a cause of action for divorce because it contained no affirmative allegation "that at the time of filing the action the parties were husband and wife"; and that consequently this was not an action for divorce and the court was without jurisdiction to make the order from which he has appealed.

We cannot agree with appellant that the allegations of the complaint "for statistical purposes as required by Section 426a of the Code of Civil Procedure" that "plaintiff and defendant were married at Visalia, County of Tulare, State of California. . . December 8, 1917" and "the date of separation was August 8, 1941" must be excluded when determining the sufficiency of the complaint.

If, as stated by appellant's counsel at the hearing on order to show cause, respondent was not then the wife of appellant and that he (appellant) had "received a divorce . . .

in Nevada in December, 1941,'' and was then living with his ''present wife,'' that was a matter of defense as to which the burden of both pleading and proof was upon him. (*Bancroft* v. *Bancroft,* 9 Cal.App.2d 464 [50 P.2d 465].)

In *Bancroft* v. *Bancroft, supra,* the court affirmed an order such as the one here appealed from. There, the continued existence of the marriage sought to be dissolved was denied by defendant, testifying in his own behalf at the hearing on order to show cause and in his answer wherein he also set up his subsequent marriage to another. In that case, the court considered at length a number of cases where a former marriage had been presumed to have terminated prior to a subsequent marriage, but determined that the rule laid down in those cases (in each of which one of the parties to the first marriage was either dead or absent) did not apply in an action such as the one here involved, where both parties to the first marriage were before the court, and the court further stated that defendant having failed to produce on the hearing satisfactory evidence of his alleged divorce from plaintiff, the trial court was justified in invoking against him the presumption ''that a thing once proved to exist continues as long as is usual with things of that nature'' (Code Civ. Proc., § 1963). In the case just cited, the court, at page 470, also stated:

''We are of the opinion that the proper rule on the question we are considering in this proceeding to obtain suit money is that applied in criminal cases in prosecutions for bigamy. In *People* v. *Huntley,* 93 Cal.App. 504 [269 P. 750], it was thus announced: 'The question as to whether or not a first marriage no longer exists is one peculiarly within the knowledge of a defendant and in such a case the burden is upon him to prove it. (*Commonwealth* v. *Boyer,* 7 Allen (89 Mass.) 306.) This burden is not an unreasonable one. (*People* v. *Velasquez,* 70 Cal.App. 362 [233 P. 359].) Then again the marriage status having been proved. . . . the presumption is that the status as shown by the prosecution continued to exist. (*People* v. *Stokes,* 71 Cal. 263 [12 P. 71.]' ''

The language quoted by appellant from *Gunderson* v. *Gunderson,* 4 Cal.App.2d 257, 261 [40 P.2d 956], (decided about ten months before *Bancroft* v. *Bancroft, supra*) that the presumption of continued existence cannot take the place of an allegation of the continuance of a status is not controlling under the facts of the instant case. The Gunderson case was

an appeal from a judgment, after a demurrer had been overruled and defendant had failed to answer. The action was to enforce a foreign divorce decree requiring defendant to make monthly payments for plaintiff's support so long as she did not remarry. The complaint set out the decree, but contained no allegation that she had not remarried. That fact was a prerequisite to her right of recovery, and it was a fact obviously peculiarly within her own knowledge. In that case, it would have been as unfair to have presumed the continuance of the unmarried status of plaintiff in the absence of allegations and proof by defendant of her remarriage, as it would be in the instant case to cast the burden upon plaintiff to allege and prove that defendant had not obtained a divorce from her in any of the forty-eight states or a foreign country.

Obviously, the case of *Feickert* v. *Feickert*, 98 N.J.Eq. 444 [131 A. 576], relied upon by appellant is neither persuasive nor controlling herein. The factual situation is not analogous to the one confronting us. In the cited case, the court was in possession of knowledge that the defendant had obtained a decree of divorce in the State of Nevada, while, in the instant case, no evidence was presented to the court that the defendant had obtained a divorce in a sister state, while plaintiff's attorney disclaimed, for her and himself, any knowledge or notification of "any Nevada decree."

Appellant urges that "It was proved without dispute that the defendant had obtained a divorce from plaintiff in the State of Nevada in December, 1941, and that she was not the wife of defendant when this action was commenced." Statements to that effect were made at the hearing by defendant's attorney. But that is not proof, evidentiary or legal.

Considering only the record properly before us on this appeal, it becomes apparent that, when making the order herein appealed from, there was no evidence of any kind before the court in opposition to the presumption of the continuing existence of the marriage sought to be dissolved. The trial judge did not "shut his eyes" to the fact (if it is a fact) that defendant had obtained a divorce in Nevada. Upon the showing before him, he merely decided that no dissolution of the marriage of plaintiff and defendant had been proved; that the marriage was still in existence; and that this was an action for divorce then pending; and exercised his discretion (Civ. Code, § 137) in making the order from which this appeal was

taken. When reviewed, every presumption is in favor of the validity of such an order. (*Westphal* v. *Westphal,* 122 Cal. App. 379 [10 P.2d 119]; *Helpling* v. *Helpling,* 74 Cal.App. 431 [240 P. 1023]; *Howton* v. *Howton,* 51 Cal.App.2d 323 [124 P.2d 837].)

Appellant contends that the court had no jurisdiction to continue the matter of attorney's fees and costs of suit to the time of trial. As we read the order, the court did not delay its decision that defendant must pay such items, but merely continued until the time of trial the determination of the amount. This is a different situation from that shown by the facts in the cases cited by appellant (*Loveren* v. *Loveren,* 100 Cal. 493 [35 P. 87], and cases following that decision), wherein it was decided that payment of such items by the husband was not "necessary" to procure a proper presentation of the wife's case, no application for such relief having been made until after all services had been rendered. Here it is apparent that such services will be rendered by the wife's attorneys in reliance upon, not her credit, but the husband's—leaving the amount to be determined by the court when it will be in a better position to estimate the value of the services. There was no showing here that such an award was not necessary, and the wife's questionnaire, which was on file and "used" at the October 1st hearing, made sufficient showing to support the order. What is "necessary" for the purpose of securing a proper presentation of the wife's case, as well as for the purpose of her support and maintenance pendente lite, is in the sound discretion of the trial court (*Howton* v. *Howton, supra*) and there is nothing in the record before us showing an abuse of such discretion.

The order appealed from is affirmed.

York, P. J., and Doran, J., concurred.